IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEKAYLA ANDREWS, as Personal Representative of the Estate of Penny Black, deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| KIMBERLY MCPHERSON, et al., | ) ) |
| Defendants. | ) |

CIVIL ACTION NO. 24-00162-JB-N

<u>ORDER</u>

This matter is before the Court on the Motion to Dismiss filed by Defendants Kimberly McPherson, Michole Carstarphen, Paul Lindsey, and Hunter Capps. (Doc. 18). The Motion is not made by Defendant Bell. The Motion has been fully briefed, and the Court conducted a hearing. Upon due consideration, and for the reasons set out herein, the Court concludes that the Motion is due to be GRANTED.

## I.    BACKGROUND

Penny Black died after having a "medical emergency" while incarcerated in the Monroe County Jail on or about April 2, 2022. Plaintiff Mekayla Andrews filed this action as personal representative of Ms. Black's estate.

The operative Amended Complaint asserts two counts for deliberate indifference under § 1983. (Doc. 12). Count One alleges deliberate indifference to "Black's serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution." (*Id.*). Although Plaintiff styles Count One as being "Against All Defendants," she alleges only

"Defendants McPherson, Carstarphen, Bell, Capps and Fictious Defendants A-L" were deliberately indifferent. (*Id.* at paragraph 19). Plaintiff does not name Defendant Lindsey, and now confirms that Count One is brought against only McPherson, Carstarphen, Bell, Capps and Fictious Defendants A-L. (Doc. 22 at PageID.199 n.1). Count Two, asserted against Defendants Lindey, Capps, and Fictitious Defendants M-Z, alleges deliberate indifference "to the medical needs of inmates in the Monroe County Jail in that they failed to establish adequate policies and procedures to respond to a medical emergency." (*Id.* at paragraph 21).

The factual allegations of the Amended Complaint are few, and are set out here in full:

12. On or about April 2, 2022, Penny Black was incarcerated at the Monroe County Jail.

13. Black had a medical emergency. She complained of trouble breathing and symptoms similar to trauma-induced respiratory or cardiac distress. She turned pale and cried for help. At one point, Black fell off her bed, stated that she felt like she was dying, and turned blue. Multiple inmates witnessed her condition, and on multiple occasions called for help from Defendants McPherson, Carstarphen, or Fictitious Defendants A-L. Black's medical condition was so obviously serious that anyone would have known it was life-threatening. In fact, some of Black's fellow inmates told Defendants McPherson, Carstarphen and Fictitious Defendants A-L that Black's condition was life-threatening and that they thought she was dying if they did not help her.

14. Acting with deliberate indifference, Defendants McPherson, Carstarphen, or Fictitious Defendants A-L ignored the pleas for help for Black's critical medical condition and failed or refused to respond to Black's life-threatening medical condition for approximately 45- 60 minutes.

15. Defendant Bell was contacted by an individual or individuals working at the Monroe County Jail. Despite being told of Black's symptoms and acting with deliberate indifference in violation of basic nursing standards, Bell advised the individual or individuals to ignore Black's symptoms. She also refused or failed to advise the correction officers to contact emergency medical personnel to respond to an obvious emergency.

16. Defendant Capps was also contacted by an individual or individuals working at the Monroe County Jail. As a jail administrator or assistant jail administrator,

Capps had the obligation to respond the medical emergency when called. Despite being told of Black's symptoms and acting with deliberate indifference in violation of his obligation as a jail administrator, Capps refuse or failed to respond. He also refused or failed to advise the correction officers to contact emergency medical personnel to respond to an obvious emergency.

17.  Defendants Lindsay, Capps, or Fictitious Defendants M-Z developed and implemented a policy at the Monroe County Jail which denied Black emergency medical care, and which would deny inmates basic emergency care. Specifically, Lindsay or Capps developed and implemented a policy that even when an inmate faced an emergency or life-threatening condition, corrections officers must not contact emergency medical assistance, including an ambulance. Instead, the policy required that corrections officers contact a jail administrator or assistant administrator before calling for emergency medical help. This policy, by its very nature, resulted in delays in providing care for an urgent or life-threatening condition, and it did so for Black. Thus, this policy had a direct causal connection to Black's death, and it amounts to deliberate indifference of Black's constitutional rights.

18.  As a proximate result of the deliberate indifference or conscious disregard of all Defendants, Penny Black died.

(Doc. 12).

## II.    STANDARD

In analyzing a Rule 12(b)(6) motion to dismiss, the Court accepts the facts pleaded as true and construes them in a light favorable to the non-moving party. *Quality Foods De Centro Am., S.A. v. Latin Am. Agribusiness*, 711 F.2d 989, 994-95 (11th Cir. 1983). All reasonable inferences are drawn in favor of the nonmovant. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Rule 8(a) requires a "'statement of circumstances, occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (citations omitted). Although a complaint does not need "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In *Ashcroft v. Iqbal*, the Supreme Court identified "two working principles" which underlie *Twombly*. 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [] Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (internal citations omitted).

III.    **ANALYSIS**

Defendants argue five (5) grounds for their Motion to Dismiss. The Court will address each in turn.

A.    **COUNT I - MCPHERSON AND CARSTARPHEN**

Defendants argue McPherson and Carstarphen are due to be dismissed as to Count One because the Amended Complaint fails to allege either of them took part in the alleged violations of Black's rights. (Doc. 19 at PageID.163). "To make out a claim for deliberate indifference, a plaintiff must demonstrate (1) "that he suffered a deprivation that was, 'objectively, "sufficiently serious,"'" (2) "that the defendant acted with 'subjective recklessness as used in the criminal

law,'" -- meaning a showing that the defendant was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff" and (3) "that even if the defendant 'actually knew of a substantial risk to inmate health and safety,' he 'cannot be found liable under the Cruel and Unusual Punishment Clause' if he 'responded reasonably to the risk.'"" *Gregory Carwie v. Mobile Cnty.,* 2025 U.S. Dist. LEXIS 14228, *23 -24 (S.D. Ala. Jan. 27, 2025) (quoting *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)).  To succeed on her claim for deliberate indifference, Defendants argue, Plaintiff must demonstrate both (1) that McPherson and Carstarphen were subjectively aware of a substantial risk of harm to Black and (2) that they acted with disregard to that risk.  (Doc. 19 at PageID.164).

Defendants' first argument is based on the word "or."  They contend Plaintiff's deliberate indifference claim against McPherson and Carstarphen depends on what the meaning of the word "or" is.   Focusing specifically on whether they each "acted with disregard," Defendants note Plaintiff alleges "Defendants McPherson, Carstarphen, **or** Fictitious Defendants A-L ignored the pleas for help and the critical medical condition and failed or refused to respond to Black's life-threatening medical condition." (Doc. 19 at PageID.166 (emphasis in original) (quoting paragraph 14 of the Amended Complaint (Doc. 12)).   Defendants contend this disjunctive allegation fails to specify which individual Defendant(s) acted with disregard.  (Doc. 19 at PageID.166 – 167).  "In other words," Defendants summarize, "by alleging that McPherson, Carstarphen, or another Defendant acted with deliberate indifference to Penny Black's medical condition, Plaintiff is alleging that one of these Defendants, but not necessarily McPherson or

Carstarphen, engaged in the acts described in the Complaint."[1] (Id. at PageID.168). Defendants contend, therefore, the Amended Complaint "[a]t most . . . alleges that Defendants McPherson and Carstarphen had subjective knowledge of a risk of serious harm, but is devoid of any allegation specific to these defendants concerning whether they disregarded this risk." (*Id.* at PageID.166).

In her Amended Complaint, though, Plaintiff expressly defines "or" to include "and." (Doc. 12 at paragraph 13 at n.1). Defendants argue Plaintiff's definition is grammatically flawed and does not allow her to escape their argument. Both parties cite grammatical sources to support grammatical arguments about the meaning of the word "or." In a vacuum, Defendants' grammatical argument about the meaning of "or" is superior to that of Plaintiff's. In the Amended Complaint, however, "or" is not in a vacuum. In the context of this Rule 12(b)(6) Motion to Dismiss and in light of the applicable standards, the Court will give effect to the definition expressed by Plaintiff. The Court finds the Amended Complaint to allege all named Defendants acted with disregard.

Defendants alternatively argue Plaintiff failed to allege McPherson and Carstarphen acted with sufficiently culpable disregard. Defendants argue "proof of deliberate indifference requires proof that a prison official consciously refused to prevent the harm," which Plaintiff failed to allege. (Doc. 19 at PageID.164 (citing *Smith v. Owens*, 625 F. App'x 924, 927 (11th Cir. 2015)). Defendants contend Plaintiff failed to "allege facts which show that the defendant's response

---

[1] Defendants acknowledge Plaintiff's allegation that "Defendants McPherson, Carstarphen, Bell, Capps **and** Fictious Defendants A-L were deliberately indifferent to Black's serious medical needs." (Doc. 19 at PageID.165 (emphasis added)). However, Defendant's correctly characterize this as a "bare and conclusory" allegation which does not support Plaintiff's claim. (Id.).

was so inadequate as to constitute 'an unnecessary and wanton infliction of pain,' and not merely the result of negligence or an inadvertent failure to provide medical care."  (*Id.* (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).  Defendants argue Plaintiff's claim fails because she did not allege the lack of medical treatment was "so 'grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" (*Id.* (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

In response, Plaintiff first distinguishes cases which address the issue of a defendant's knowledge of a serious medical need.  (Doc. 22 at PageID.198 – 200).  However, this response is unresponsive.  Defendants' argument here is not based on McPherson's or Carstarphen's lack of knowledge of the risk to Black, but rather the quality of their alleged disregard of it.

Plaintiff makes an additional argument based on *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), in which the United States Supreme Court held "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain, . . . proscribed by the Eighth Amendment."  (Doc. 22 at PageID.201).  The Court in *Estelle* explained, "[t]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regard[l]ess of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 104 - 105.  However, the Court in *Estelle* also cautioned that its holding "does not mean . . . that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment," and that "in the medical context, an

inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"

More recently, and saliently, the Eleventh Circuit clarified the "standard for establishing liability on an Eighth Amendment deliberate-indifference claim."  Based on the United States Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Court held "a deliberate-indifference plaintiff must show that the defendant acted with **'subjective recklessness as used in the criminal law,'** 511 U.S. 825, 839, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), and that in order to do so, the plaintiff must demonstrate that **the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm**."  *Wade*, 106 F.4th at 1254 (emphasis added).  Defendant argued this holding in *Wade* in its Motion to Dismiss.  Plaintiff failed to address or even cite *Wade*.  The sparse allegations in the Amended Complaint relating to McPherson's or Carstarphen's subjective knowledge and recklessness fall short of the standards articulated in *Wade*.

The Court concludes Count One of the Amended Complaint fails to state a claim of deliberate indifference against McPherson or Carstarphen.

### B.  COUNT ONE - CAPPS

Defendants argue Capps is due to be dismissed as to Count One because Plaintiff fails to sufficiently allege he acted with deliberate indifference.  (Doc. 19 at PageID.169).  In support of this argument, Defendants first note the Amended Complaint (Doc. 12) directly contradicts the initial Complaint (Doc. 1-3) in terms of the allegations of Capps' knowledge surrounding Black's medical emergency as well as his response.  In her initial Complaint, Plaintiff alleged - clearly and

unequivocally - that Capps was informed of Black's condition and that an ambulance was already

en route.   Paragraph 16 of Plaintiff's initial Complaint states:

> An individual or individuals at the Monroe County Jail attempted to contact
> Defendant Lindsay during Black's medical emergency. He did not respond. **The
> individual or individuals then contacted Defendant Capps and stated that Black
> was turning blue and that an ambulance was in route** [sic] **to the jail. According
> to Lindsay, Capps had told the individual or individuals at the jail that he could
> not respond to the emergency.** Again, according to Lindsay, Capps contacted
> Lindsay by telephone, and explained the emergency to Lindsay.

(Doc. 1-3 (emphasis added)).

In her Amended Complaint, Plaintiff deletes any reference whatsoever to the ambulance.

She deletes her allegation that Capps was informed of the emergency and that he was advised

an ambulance was en route.  Plaintiff deletes her allegation that Capps advised individuals at the

jail that he "could not respond."  Having deleted these allegations, Plaintiff then alleges the

contrary.  In her Amended Complaint, Plaintiff alleges Capps "refused or failed to respond"

"[d]espite being told of Black's" condition, and "refused or failed to advise the correction officers

to contact emergency personnel to respond."  (Doc. 12 at paragraph 16).

Even in light of the standards applicable to this Rule 12(b) Motion to Dismiss, the Court

finds that the Amended Complaint directly contradicts the initial Complaint in terms of Capps'

knowledge and response.  The Court is unpersuaded by Plaintiff's attempts to characterize these

contradictions as clarifying or supplementary allegations.  They are neither.  Plaintiff's initial

Complaint is clear, and her Amended Complaint contradicts it on these material points.

For the reasons set out herein, and in Defendants' briefs, the Court accepts the allegations

in Plaintiff's initial Complaint as true. Based on those allegations, the Court concludes Plaintiff

has failed to sufficiently allege a claim for deliberate indifference against Capps in Count I.  Capps

was told of Black's condition and that an ambulance was already en route, and he then stated he "could not respond." Based on Capps' knowledge, Plaintiff has not alleged an "actual inference of required action." *Dennis v. Warden, Ware State Prison*, 648 F. Appx 918, 920 (11th Cir. April 22, 2016) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). Plaintiff has not alleged Capps acted with "subjective recklessness as used in the criminal law" or that he "actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade, supra*.

The Court concludes Count One of the Amended Complaint fails to state a claim against Capps for deliberate indifference.

### C. COUNT II

Defendants argue Plaintiff has failed in Count II to sufficiently allege Lindsey or Capps acted with deliberate indifference on the basis of policies and procedures at Monroe County Jail. (Doc. 19 at PageID.175).[2] In Plaintiff's initial Complaint, she alleged they failed to establish policies regarding the proper response to a medical emergency. (Doc. 1-3) Plaintiff deleted those allegations in her Amended Complaint, and alleges they developed and implemented a policy which denied Black emergency medical care. (Doc. 12).

Defendants correctly characterizes Count II as a "supervisory liability" claim. (Doc. 19 (citing *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1298 (11th Cir. 2023), *Piazza v. Jefferson County, Alabama*, 923 F.3d 947, 957 (11th Cir. 2019), *Christmas v. Harris County*, 51 F.4th 1348, 1355 (11th Cir. 2022)). As "supervisory" officials, Lindsey and Capps are liable only for their own

---

[2] Defendants make the same argument here regarding the disjunctive policy allegations against them. The Court rejects that argument for the same reasons set out above.

misconduct.  "It is well established in [the Eleventh] Circuit that 'supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'"  *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999))).  Furthermore, the "standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous."  *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 957 (11th Cir. 2019).

To establish supervisory liability, a plaintiff must demonstrate either personal participation or a "causal connection."  More specifically, the Eleventh Circuit has explained "'supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'"  *Cottone*, 326 F.3d at 1360 (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).  A causal connection, in turn, may be established by demonstrating that "(1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) the facts support an 'inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 974, 975 (11th Cir. 2011) (quoting *Cottone*, 326 F.3d at 1360)).

In her Amended Complaint, Plaintiff alleges a causal connection of the second kind enumerated in in *Evans, supra*; namely, that Lindsey and Capps implemented a policy that

resulted in deliberate indifference to Black's constitutional rights.  Plaintiff's allegations against

Lindsey and Capps in Count II, in full, are:

> 17.    Defendants Lindsay, Capps, or Fictitious Defendants M-Z developed and implemented a policy at the Monroe County Jail which denied Black emergency medical care, and which would deny inmates basic emergency care. Specifically, Lindsay or Capps developed and implemented a policy that even when an inmate faced an emergency or life-threatening condition, corrections officers must not contact emergency medical assistance, including an ambulance. Instead, the policy required that corrections officers contact a jail administrator or assistant administrator before calling for emergency medical help. This policy, by its very nature, resulted in delays in providing care for an urgent or life-threatening condition, and it did so for Black. Thus, this policy had a direct causal connection to Black's death, and it amounts to deliberate indifference of Black's constitutional rights.

(Doc. 12).

As noted, in terms of supervisory liability, a causal connection can be proved by

demonstrating "that the supervisor's 'policy or custom resulted in deliberate indifference to

constitutional rights.'"  *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (quoting Piazza, 923

F.3d at 957)).  However, a "plaintiff can only allege the existence of a policy or custom by

'point[ing] to multiple incidents or multiple reports of prior misconduct by a particular

employee.'"  *Id.*  Although a causal connection may be alleged by the implementation or absence

of a policy, "[e]ither way, . . . to prove that a policy or its absence caused a constitutional harm,

a plaintiff must point to multiple incidents, *see Rivas* [*v. Freeman*], 940 F.2d [1491,] 1495-96 [11th

Cir. 1991], or multiple reports of prior misconduct by a particular employee, *see Danley* [*v. Allen*],

540 F.3d [1298,] 1315 (11th Cir. 2008)."  *Piazza*, 923 F.3d at 957.  Plaintiff makes no such

allegations.

Plaintiff argues a policy that allows non-medical employees to ignore obvious medical

needs for unauthorized reasons can be facially unconstitutional.  (Doc. 22 at PageID.206).  In

support of this argument, Plaintiff cites *Ellis v. Kern Cty. Sheriff Dept.*, 2023 U.S. Dist. LEXIS 186303 (E.D. Calif. Oct. 17, 2023). Neither the facts of *Ellis* nor its holding apply to Plaintiff's allegations in this case. The policy at issue in *Ellis* allowed "staff to disapprove a doctor's prescription for *unauthorized* reasons." 2023 U.S. Dist. LEXIS 186303 at *6. The policy allowed non-medical staff to disapprove "prescriptions prescribed by facility doctors and caregivers." *Id.* at *5. The policy was followed, and it caused injury to the plaintiff in *Ellis* when an officer "took it upon himself to disregard" a doctor's order for crutches. *Id.* at * 3-4.

The defendant in *Ellis* argued the policy was "not facially unconstitutional merely because it allows non-medical jail staff to deny prescriptions to detainees made by medical personnel." *Id.* at *7. The court rejected defendant's argument in the context of a motion to dismiss, but it did **not** hold the policy was facially unconstitutional. Rather, it concluded that defendant's argument against facial unconstitutionality assumed facts not in evidence. Then the court sting-cited summary judgment cases in which the parties disputed the very existence of a policy. It does not appear that the existence of the policy was disputed in *Ellis*. The existence of the alleged policy in the instant case is not disputed.

The Court does not find the policy at issue in *Ellis* to bare any meaningful resemblance to the policy alleged in the instant case. The policy alleged by Plaintiff here does not permit officers to ignore anything, certainly not the orders of medical orders. Rather, Plaintiff alleges the policy requires corrections officers to contact a jail administrator or assistant administrator before calling for emergency medical help. Based on the allegations of Plaintiff's initial Complaint, which the Court accepts as true (*see supra*), the policy was not followed in this case. By the time corrections officers contacted Capps to inform him of Black's condition, an ambulance was

already en route.

Plaintiff also misplaces reliance on *Fields v. Corizon Health, Inc.*, 490 F. App'x 174 (11th Cir. Sept. 6, 2012) and *Grissom v. Corizon, LLC*, 2022 U.S. Dist. LEXIS 167497 (M.D. Ala. Sept. 16, 2022). *Fields* was an appeal of a jury verdict. 490 F. App'x at 175. The jury found Corizon, "through its policy or custom, refused to provide [plaintiff] proper medical attention in violation of the Eighth Amendment." *Id.* Based on an extensive trial record, the court reviewed the jury verdict and the trial court's denial of Corizon's Rule 50 motion for judgment as a matter of law. It found the jury "reasonably could have resolved the matter the way it did." *Id.* at 182. The court in *Fields* did not consider whether the plaintiff had sufficiently alleged Corizon's policy in his complaint, pursuant to *Myrick*, *Piazza*, *Cottone, supra,* and other Eleventh Circuit precedent applicable to that issue.

In *Grissom*, defendant Corizon filed a motion for summary judgment on a claim that it was deliberately indifferent to serious medical needs "by having a policy or custom 'of refusing to purchase necessary medical supplies unless those supplies were available for purchase from a single [specified] vendor[].'" 2022 U.S. Dist. LEXIS 167497 at *15. The court stated that, "to survive summary judgment on this claim, [plaintiff] must show: (1) that [she] had an objectively serious medical need; (2) that Corizon had a custom or policy that if implemented constituted deliberate indifference to that serious medical need; and (3) that [her] injury was caused by the policy's deliberate indifference to her serious medical need." *Id.* at 16.

Plaintiff characterizes the court's order in *Grissom* as finding the existence of the policy and defendant's following it "was sufficient to set forth a 1983 claim" because the policy was not medically justified. Plaintiff continues, stating the court noted Eleventh Circuit precedent

regarding the "allegations" necessary to state a claim. However, in *Grissom*, as in *Fields*, the issue of whether the plaintiff had sufficiently alleged in the complaint a policy for purposes of "supervisory liability" under § 1983 was not before the court. The opinion *Grissom* is unhelpful to Plaintiff.

Plaintiff's allegations of Defendants' policy that was implemented (or not) are bare and conclusory. She fails to sufficiently allege any other incidents or reports to support her claim that the policy implemented (or not) by Lindsey or Capps caused a constitutional harm to Black. Whether the Court considers Plaintiff's allegations of the absence of a policy in her initial Complaint or the implementation of a policy in her Amended Complaint, Plaintiff has failed to sufficiently allege a claim against Lindsey or Capps in Count II.

### D. QUALIFIED IMMUNITY

Defendants next argue McPherson, Carstarphen, Lindsey, or Capps are entitled to qualified immunity. (Doc. 19 (citing *District of Columbia v. Wesby*, 583 U.S. 48 (2018)). In *Wesby*, the United States Supreme Court stated:

> Under our precedents, officers are entitled to qualified immunity under §1983 unless (1) they **violated a federal statutory or constitutional right**, and (2) the unlawfulness of their conduct was **"clearly established at the time*." Reichle v. Howards*, 566 U. S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *al-Kidd*, *supra*, at 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (quoting *Anderson v. Creighton*, 483 U. S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *al-Kidd*, *supra*, at 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U. S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

583 U.S. at 62 – 63 (emphasis added).[3]

In *Lawson v. Curry*, the Eleventh Circuit Court of Appeals noted the "Supreme Court has held that a 'necessary concomitant' to the question of whether a plaintiff has alleged a violation of a clearly established federal right is 'the determination of whether the plaintiff has asserted a violation of a constitutional right at all.'  If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right."  244 F. App'x 986, 988 (11th Cir. Aug. 10, 2007) (*quoting GJR Invs. v. County of Escambia*, 132 F.3d at 1366-67 (11th Cir. 1998) (quoting *Seigert v. Gilley*, 500 U.S. 226, 232 (1991)).

Based on Plaintiff's failure to plausibly allege a violation of a constitutional right against these Defendants, the Court concludes they are entitled to qualified immunity.

### E.  FICTITIOUS PARTIES

Defendants argue Plaintiff's claims against fictitious parties are due to be dismissed because such pleading is generally not permitted in federal court.  (Doc. 19 at PageID.187 – 188). Plaintiff offers no opposition to this argument.  Rather, she contends that the "proper process" in federal court is to dismiss fictitious parties without prejudice.  The Court concludes Plaintiff's claims against fictitious parties are due to be dismissed without prejudice.

### CONCLUSION

Upon due consideration of Defendants' Motion to Dismiss (Doc. 18) and the supporting briefs, the Court ORDERS as follows:

---

[3] Plaintiff does not dispute that these Defendants were acting within their discretionary authorities.  (Doc. 22 at PageID.208 n.2).

1.  Defendants' Motion to Dismiss is GRANTED.

2.  Plaintiff's claims against Defendants McPherson, Michole Carstarphen, Paul Lindsey, and Hunter Capps are DISMISSED.

3.  Plaintiff's claims against fictitious defendants A – Z are DISMISSED WITHOUT PREJUDICE.

4.  Plaintiff's claims against Defendant Bell shall go forward.

    **DONE and ORDERED** this 28th day of March, 2025.

    /s/ JEFFREY U. BEAVERSTOCK
    CHIEF UNITED STATES DISTRICT JUDGE